IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| COURTNEY BIRD,<br><br>       Plaintiff,<br><br>   vs.<br><br>STATE OF HAWAII; THE DEPARTMENT OF HUMAN SERVICES; DHS, SOCIAL SERVICES DIVISION, CHILD WELFARE SERVICES BRANCH; PANKAJ BHANOT[1]; JEFFREY R. WOODLAND; DOE DEFENDANTS,<br><br>      Defendants. | CIVIL NO. 15-00304 DKW-KJM<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO STRIKE, AND REMANDING STATE LAW CLAIM** |

Approximately eight years after the death of her infant daughter, an incident for which she disavows responsibility, Plaintiff Courtney Bird filed the instant lawsuit challenging her 2007 placement on the State's "central registry of reports of child abuse or neglect" (the "Registry").  Compl. ¶ 1, ECF No. 1-1.  The complaint, styled as a class action,[2] seeks both injunctive and monetary relief from

---

[1] The Court substitutes as a Defendant the current Department of Human Services ("DHS") Director, Pankaj Bhanot, in place of Rachel Wong, who held that title at the time the Complaint was originally filed.  Compl. ¶ 15; Fed. R. Civ. Proc. ("FRCP") 25(d).

[2] On the record before it, the Court is unable to identify anyone included in this purported class of "similarly situated" individuals, and class certification has not been sought.

Defendants for alleged constitutional violations via 42 U.S.C. § 1983.[3]  Compl.

¶¶ 6, 68–76.  Initially filed in state circuit court, Defendants removed this action on

August 6, 2015.  Notice of Removal, ECF No. 1.

Before the Court are Defendants' Motion for Summary Judgment ("MSJ"),

filed September 29, 2016 (ECF No. 24), and Plaintiff's November 23, 2016 motion

to strike certain exhibits that Defendants provided in support of their MSJ (ECF

No. 39).  For the reasons set forth below, the Court GRANTS the MSJ as to Bird's

Section 1983 claim, DENIES Bird's Motion to Strike, and REMANDS Bird's

remaining state law claim back to state court.

## BACKGROUND

### I.  Factual Background

On March 28, 2007, Plaintiff Courtney Bird, a Navy wife living in the State

of Hawaiʻi (Compl. ¶ 11), returned home from a mid-day dentist appointment to

find her then-husband, Petty Officer Second Class Frank Fontana ("Fontana")

administering CPR to their infant daughter, C.F.  Compl. ¶¶ 24, 29–30; *see also*

DHS Supervisor's Status Report, DHS Referral to Family Ct., Dec. 10, 2007, at

DHS 788, ECF No. 38-2 [hereinafter Status Report].  C.F., who was born only

weeks earlier in February 2007, was transported by ambulance to the Tripler Army

---

[3]Bird names the listed Defendants because: DHS oversees Child Welfare Services ("CWS") and maintains the Registry (Compl. ¶ 13); CWS is "responsible for expunging reports" of child abuse/neglect (Compl. ¶ 14); Bhanot is the current DHS Director who oversees DHS and CWS (Compl. ¶ 15); and Woodland is a CWS supervisor (Compl. ¶ 16).

Medical Center where she died of cardiac arrest. Compl. ¶¶ 24, 30–31. On July

10, 2007, Fontana allegedly "confessed to harming [C.F.] with actions that caused

[her] death."[4] Status Report, at DHS 788; *see also* Compl. ¶¶ 38–39, 41. Fontana

was reportedly charged with "First Degree Murder, Assault and Falsifying

Statements." Status Report, at DHS 788.

On November 27, 2007, an agent of the Naval Criminal Investigative

Service ("NCIS") informed DHS that "[Bird] **is not a suspect** and the investigation

is on-going." Status Report, at DHS 788 (emphasis in original). Nonetheless, Bird

"was [allegedly] told by [State] authorities that she needed to allow DHS to have

temporary custody" of her then-two-year-old daughter, T.F.; and Bird claims that

"[s]he agreed because she was so upset [after C.F.'s death] that she understood the

need for help at a time of such profound grief." Compl. ¶ 33. According to the

Complaint, "[u]nknown to [Bird], the moment the police were notified about

[C.F.'s March 28, 2007] death, [Fontana]'s name, as well as [Bird's] own name,

were reported to the Registry without regard to innocence or guilt, and DHS

opened an investigation." Compl. ¶ 35.

When a report of possible abuse is submitted to DHS, the Hawaii

Administrative Rules ("HAR") require DHS to record it in the Registry (HAR

§ 17-1610-18) and conduct an investigation. Compl. ¶ 18. In order to have a

---

[4]Details surrounding Fontana's actions and C.F.'s injuries can be found in the Infant Autopsy
Report, Concise Statement of Facts in Supp. of MSJ, Ex. 17, at DHS 1428, ECF No. 37-13.

report expunged, a parent may file an administrative appeal on the grounds that the report was "frivolous or made in bad faith." Compl. ¶ 21 (citing Haw. Rev. Stat. ("HRS") § 350-2(d)(1)).  Alternatively, if the DHS initiates a family court proceeding, the parent can have the report expunged if he or she prevails on the merits, Compl. ¶ 23 (citing HRS § 350-2(d)(2)).   According to Bird, "[i]f the family court proceeding is dropped and never reaches an adjudication on the merits, the report is permanent and the parent has no recourse."  Compl. ¶ 62.  Bird also contends that, although HAR § 17-1610-11 requires DHS to inform the parent when an investigation is complete, "DHS routinely failed to follow its own regulation and give the required notice."  Compl. ¶ 20.  To that end, Bird complains that Defendant Woodland "informed [her] that DHS does not provide notice when listing individuals in the child abuse registry."  Compl. ¶ 16. "Instead," Bird continues, "DHS did its internal investigation and confirmed the report as to both [Bird] and [Fontana]," and then filed a petition in Family Court for custody of T.F.  Compl. ¶ 36.

While the NCIS conducted its criminal investigation into C.F.'s death, DHS began investigating possible child abuse and/or neglect in order to secure T.F.'s safety.  After months of home checks, supervised visits, and evaluations by various medical and social work professionals, the Family Court eventually issued an order granting Bird custody of T.F., and authorizing them "to leave Hawaii [for

Tennessee] on the conditions that Tennessee DHS approves the . . . placement, and Tennessee DHS puts in writing that services for [Bird] and [T.F.] will be in place when mother and daughter arrive in Tennessee, and both are received by the Court." Orders Concerning Child Protective Act ("CPA"), Dec. 12, 2007, Defs.' Separate & Concise Statement of Facts in Supp. of MSJ ("Concise Facts in Supp."), Ex. 22, at DHS 774, ECF No. 38-3. The Family Court also found that "[t]he child/ren's family can provide a safe family home without the assistance of a service plan," revoking the prior order of family supervision, and terminating its jurisdiction over the case. Orders Concerning CPA, June 3, 2008, Concise Facts in Supp., Ex. 23, at DHS 719, ECF No. 38-4.

Bird and T.F. subsequently moved to Tennessee and rebuilt their lives:

37. Eventually, I was able to regain custody of T.F. and I returned home to Tennessee to live with my father. On June 3, 2008, I appeared telephonically before the Family Court in Hawai'i, where I learned that my case was closed. At no point did the Court state that I would be on the child abuse registry. As such, I moved on with my life the best that I could.

38. In 2011, I married my current husband and we had another child. Having the resources and a loving home to provide, we made the decision to adopt a child from Africa. Preferably, we wanted to adopt an older child who was HIV positive so that we could provide him or her with the kind of medical and family care that they were lacking in their current situation.

39. When my husband and I began the adoption process [in Tennessee], we informed our friends and family of our decision. We held fundraisers to alleviate the adoption costs. My husband and I made a non-refundable payment of $3,000 to the adoption agency. In addition, we spent a significant amount

on fingerprints, background checks, and psychological examinations.

40. My husband and I went through the requisite home visits and consultations with a social worker. I was honest with our case worker and let her know what happened with C.F. in Hawaiʻi. She told me that it shouldn't be a problem.

41. However, when our social worker sent background requests to the various states in which I have lived, Hawaiʻi responded that I was a confirmed perpetrator of child abuse. This response made me ineligible to adopt.

Bird Decl. ¶¶ 37–42, ECF No. 43-1. Between Summer 2012 and Spring 2013, Bird communicated with various DHS officials, sometimes via her attorney, regarding her presence on the Registry, but their answers did not allow the adoption to proceed.

## II.  <u>Procedural Background</u>

On July 20, 2015, Bird filed a class action Complaint in the First Circuit Court, State of Hawaiʻi alleging two claims: (1) violation of a state constitutional right to due process ("Count I"); and (2) violation of 42 U.S.C. § 1983 ("Count II"). *See* Compl., ECF No. 1-1. Defendants timely removed the action to this Court based on Bird's Section 1983 claim. Notice of Removal, ECF No. 1.

On September 29, 2016, Defendants filed their MSJ (ECF No. 24) arguing that Bird's claims fail as a matter of law. On November 23, 2016, Bird concurrently filed her opposition to the MSJ (ECF No. 42) and a motion to strike thirteen exhibits Defendants filed in support of their MSJ (ECF No. 39).

6

Defendants then concurrently filed their reply in support of the MSJ (ECF No. 49) and their opposition to Bird's Motion to Strike (ECF No. 50). On December 9, 2016, Bird filed her reply in support of the Motion to Strike (ECF No. 51).

The Court heard both motions on December 21, 2016. *See* Tr. of Proceedings, ECF No. 56. At the hearing, the issue of whether Bird's Section 1983 claim is barred by the applicable statute of limitations was raised, and the Court requested the parties to submit supplemental briefing on the issue. *See* Entering Order, Dec. 21, 2016, ECF No. 54. The parties complied with that request on January 23, 2017 (ECF No. 61 (Bird)) and February 6, 2017 (ECF No. 62 (Defendants)), respectively.

## STANDARD OF REVIEW

Pursuant to FRCP 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

When a motion for summary judgment is made and adequately supported, the burden shifts to the party opposing summary judgment "to demonstrate the existence of a genuine dispute." *Kowalski v. Mommy Gina Tuna Res.*, 574 F. Supp. 2d 1160, 1162 (D. Haw. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). To meet this burden, the non-moving party must do "more than simply show that there is some metaphysical doubt as to

7

the material facts" and instead must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec.*, 475 U.S. at 586–87 (citations and internal quotation marks omitted). For, if no evidence can be mustered to sustain the nonmoving party's position, a trial would be useless. *See Kahumoku v. Titan Mar., LLC*, 486 F. Supp. 2d 1144, 1150 (D. Haw. 2007) (explaining that one of the primary purposes of summary judgment is to "isolate and dispose of factually unsupported claims or defenses")(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

With these basic principles in mind, the Court turns to the merits of the motions at issue.

## DISCUSSION

## I.    Defendants Are Entitled To Summary Judgment On Bird's Section 1983 Claim

Bird seeks relief under 42 U.S.C. Section 1983 for alleged violations of her constitutional right to due process. Among other things, Bird asserts that the State should not have placed her on the Registry in 2007 because: (i) Fontana was the one solely responsible for C.F.'s injuries, (ii) an evidentiary hearing should have first been conducted, and (iii) at least concurrent notice of her placement should have been provided. After viewing the evidence in the light most favorable to Bird, the party opposing summary judgment, *see Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), the Court concludes that Bird's Section 1983 claim is time-barred.

Under 42 U.S.C. Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 43 U.S. 137, 144 n.3 (1979)) (internal quotation marks omitted). The purpose of Section 1983 is to deter state actors from using "the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)) (explaining that Section 1983 "was intended to '[create] a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution" (citations omitted)).

### A. Resolution Of Bird's Section 1983 Claim Turns On When The Applicable Two-Year Statute Of Limitations Began To Run

Section 1983 does not contain a statute of limitations; rather, it borrows the appropriate limitations period applicable under the law of the state in which the

alleged constitutional injury took place.  *See, e.g., Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012) ("[I]n this § 1983 suit, the district court appropriately borrowed Oregon's residual two-year statute of limitations for personal injury actions.").  Where there is more than one possible statute of limitations under state law, federal courts apply the limitations period applicable to personal injury actions in the forum state.  *Owens v. Okure*, 488 U.S. 235, 240–41 (1989) (citing *Wilson v. Garcia*, 471 U.S. 261, 272, 279 (1985) ("The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983.")).[5]  In Hawaiʻi, the statute of limitations for personal injury actions is two years (*see* HRS § 657-7), and the parties do not dispute that this two-year limit applies in the instant case.  *See, e.g.*, Suppl. Mem. in Supp. of Pl.'s § 1983 Claim (Count II), at 4, ECF No. 61 ("The applicable Hawaiʻi statute is [HRS] § 657-7, setting the limitations period at two years from the date of the violation."); Defs.' Resp. to Pl.'s § 1983 Claim (Count II) re: MSJ 2–4, ECF No. 62.

---

[5] *Cf., e.g.*, *Trefry v. Phillips*, 821 F. Supp. 2d 393, 395 (D. Me. 2011) (determining that appropriate limitations period for plaintiff-mother's § 1983 claim was the state's 3-year statute of limitations for personal injury actions and not the state's 6-year contractual limitations period, which plaintiff-mother argued for based on claims of bad faith and breach of a purported foster care-related contract she entered into with the state).

"Although state law determines the length of the limitations period, 'the determination of the point at which the limitations period begins to run is governed solely by federal law.'" *McCoy v. San Francisco*, 14 F.3d 28, 29 (9th Cir. 1994) (quoting *Hoesterey v. City of Cathedral City*, 945 F.2d 317, 318–19 (9th Cir. 1991), *cert. denied*, 504 U.S. 910 (1992)).  Under federal law, the statute of limitations begins to run on a Section 1983 claim "when plaintiff knows or has reason to know of [the] injury which is the basis of [her] action." *Stanley v. Trustees of Cal. State. Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006) (quoting *Hoesterey*, 945 F.2d at 319); *see also Wilson v. City of Fountain Valley*, 372 F. Supp. 2d 1178 (C.D. Cal. 2004).  Thus, to survive the threshold timeliness inquiry under the applicable two-year statute of limitations, the Court must find that Count II accrued—*i.e.*, that Bird either knew of her alleged constitutional injury, or that she had sufficient facts such that a reasonable inquiry would have revealed the basis of her Section 1983 action—not more than two years prior to the Complaint's July 20, 2015 filing date in state court.

## B. Bird's Section 1983 Claim Accrued By 2012, More Than Two Years Prior To The July 20, 2015 Filing Of The Complaint

The State placed Bird on the child abuse and neglect Registry, in alleged violation of her due process rights, in 2007—shortly after the death of C.F. According to the State, that placement is what caused Bird's Section 1983 claim to accrue, which would render her July 2015 complaint untimely by many years.

Bird's exhibits paint a different, albeit ultimately immaterial, picture. Her exhibits suggest that she first learned of her placement on the Registry—and therefore first became injured by that conduct, *see Stanley*, 433 F.3d at 1136 (citation omitted)—at some point in 2012. On June 8, 2012, DHS sent a letter to a social worker from Bird's prospective adoption agency in Tennessee. June 8, 2012 Letter, Separate & Concise Statement of Facts in Supp. of Pl.'s Opp'n to MSJ ("Concise Facts in Opp'n"), Ex. H, at Bird000001, ECF No. 43-12. According to Bird, "It was during the adoption process that [she and her current husband] were informed of [her] placement on the Registry." Bird Decl. ¶ 49. Bird claims that she was "caught completely unaware by this revelation because [she] did not know that this list existed, let alone that [she] was on it." Bird Decl. ¶ 42. Although she does not pinpoint a specific date, Bird must have learned of the June 8, 2012 letter's contents within days because by June 26, 2012,[6] Bird initiated a back-and-forth dialogue with DHS. In that dialogue, which ran its course in 2012, Bird asked for the evidence of abuse or neglect that DHS relied on for its Registry placement, along with evidence demonstrating that DHS had previously notified her of its placement decision.[7] Bird wrote, "I believe I was erroneously added to

---

[6]Bird's attorney acknowledged that Bird had formal notice of her inclusion on the Registry no later than September 12, 2012. *See* May 14, 2013 Letter, Concise Facts in Opp'n, Ex. J, at Bird000092, ECF No. 43-14.

[7]*See, e.g.*, June 26, 2012 E-mail, Concise Facts in Opp'n, Ex. I, at Bird000002, ECF No. 43-13 ("I have gone over all of the paperwork I have on the case, including court records and reports from DHS, and nowhere in it [is there] anything that indicates that I 'threatened abuse or

the Central Child Abuse Registry and I am trying to resolve the issue through the Department prior to further exploring legal options."  July 16, 2012 E-mail, Concise Facts in Opp'n, Ex. I, at Bird 000009.  Rather than dissuade her from that avenue, Defendant Woodland "strongly encourage[d] [Bird] to contact the attorney [she] retained [back in 2007] to discuss . . . [her] concerns with [being] listed on the child abuse database."  Aug. 22, 2012 Letter, Concise Facts in Opp'n, Ex. H, at Bird000012.  Together, these documents demonstrate that by 2012, Bird knew the State had placed her on the Registry, felt this placement was unjustified, was contemplating her legal options to address that perceived injustice, and was even encouraged to do so by DHS.  In other words, even if the Court were to ignore the State's position, Bird's Section 1983 claim accrued no later than August 2012, so her July 2015 complaint would still be untimely.

Bird's untimeliness becomes even clearer upon review of the early 2013 correspondence with the DHS authored by her attorney.  On January 23, 2013, Bird's counsel wrote to DHS and foreshadowed the instant lawsuit: "Enclosed please find the *Humphries v. L.A. County*, 554 F.3d 1170 case . . . [, which]

---

neglect.'"); July 1, 2012 E-mail, Concise Facts in Opp'n, Ex. I, at Bird000007 ("I do not seem to have copies of anything that mentions I will be placed on a central registry of any sort, nor do I have copies of anything that says that I was deemed to be a perpetrator of any sort."); Aug. 4, 2012 E-mail, Concise Facts in Opp'n, Ex. I, at Bird000010 ("I would like a copy of the paperwork that shows that I was notified that I was going to be placed on the Central Child Abuse Registry in the state of Hawaii. . . .  I would like a copy of the particular document that shows that I was deemed a perpetrator of threatened harm. . . [, and] the particular document that names me as a perpetrator of threatened neglect, since I also do not see this in my records.").

compels you to remove Ms. Bird's name from the child abuse registry." *See*

Jan. 23, 2013 Letter, Concise Facts in Opp'n, Ex. J, at Bird000035. On March 21,

2013, Bird's attorney wrote again to DHS and did not mince words: "Ms. Bird is

prepared to press her case in a court of law . . . unless you remove her from the list

forthwith." Mar. 21, 2013 Facsimile, Concise Facts in Opp'n, Ex. J, at

Bird000082. And on May 14, 2013, Bird's attorney hand-delivered a letter to State

Deputy Attorney General Candace Park stating, in relevant part:

> Based upon the inconsistent information that we have been
> receiving about the hearing process and the length of time it has
> been since my client was initially placed on the child abuse
> index, it is my client's request to bring this matter before the
> Federal District Court in Hawaii.
>
> . . . .
>
> Before filing the Federal lawsuit, I will give you until May 31,
> 2013 to provide our office with law to support your position. If
> I do not hear from you by May 31, 2013, we will presume that
> our legal position is correct. We stand on the *Humphries* case.
> We will proceed with litigation in Federal District Court.

May 14, 2013 Letter, Concise Facts in Opp'n, Ex. J, at Bird000093–94.

The above-mentioned correspondence between Bird, Bird's attorney, and

various DHS and CWS officials—including the September 12, 2012 notice, which

Bird's attorney referenced in the May 14, 2013 hand-delivered letter; the January

23, 2013 e-mail; and the March 21, 2013 facsimile—occurred more than two years

before Bird filed her Complaint in the Circuit Court of the First Circuit, State of

Hawai'i on July 20, 2015. That is, as a matter of law, Bird had the requisite

knowledge to support Count II—at the *very* latest—by May 2013, more than two

years before Bird filed her July 20, 2015 Complaint. *Cf., e.g.*, *Stanley*, 433 F.3d at

1136 ("It is unnecessary to determine exactly when [plaintiff] had notice, because

she certainly had reason to know of the injury upon which her action was based

when she filed a complaint alleging virtually identical claims with the State Board

of Control on April 27, 2001."). As such, Bird's Section 1983 claim against

Defendants is time-barred.

### C. The "Continuing-Violation" Doctrine Cannot Save Bird's Section 1983 Claim

Bird argues that her claim is nonetheless viable because of the continuing

violation doctrine. That is, in her supplemental briefing, Bird argues that Hawaii's

two-year statute of limitations does not bar Count II because the actionable injury

was continuing in nature:

> [Bird]'s experiences are important because they provide context
> to how [HRS] § 350-2 deprives individuals of due process and
> then subsequently deprives them of protected liberty interests.
> Potential class members have suffered similar deprivations.
> However, [Bird]'s experiences are not dispositive to the
> timeliness of her claim. What is dispositive is that the State has
> not yet ceased violating [Bird's] and the potential class
> member's constitutional rights.
>
> Federal law provides that when a plaintiff challenges an
> ongoing constitutional violation, the limitations period does not
> begin to run until the violation ends. *See Virginia Hosp.*
> *Ass['n] v. Balies*, 868 F.2d 653, 663 (4th Cir. 1989)[, *aff'd sub*

> *nom. Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498
> (1990)]. Here, [Bird] seeks to invalidate [HRS] § 350-2
> because it has and continues to provide the mechanism by
> which the State violates her and other individuals'
> constitutionally guaranteed rights. Because the constitutional
> violations are ongoing, the limitations period has not yet begun
> to run.

Pl.'s Suppl. Mem. 2, ECF No. 61. Bird claims to be "challenging a systematic issue" because, under her theory, "the State's continual application of [HRS] § 350-2 deprives [Bird] and the potential class of their constitutional rights every day the statute is effective." Pl.'s Suppl. Mem. 11. The Court disagrees.

As Defendants correctly reflect, the alleged constitutional violation at issue in this case derives from "an actual, specific, concrete" event: "Plaintiff Bird is challenging her placement on the Registry[; h]er claim accrued when she knew or should have known that she was placed on the Registry." Defs.' Response to Pl.'s Suppl. Mem. 9–10, ECF No. 62. That is, the violation Bird alleges is the placement of her name on the Registry without constitutionally required due process, and not the placement of her name on the Registry as part of a greater culture of constitutionally deficient harassment. *Compare, e.g.*, *Moody v. Oklahoma Dep't of Corrections*, 879 F. Supp. 2d 1275, 1284 (N.D. Okla. 2012) (finding § 1983 hostile-work-environment claim based on sexual harassment to be timely because the alleged actions were "part of a greater culture of sexual harassment" occurring both pre-and-post limitations period that involved frequent

incidents "that went virtually unchecked by the facility's chain of command"); *with Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 239 (3d Cir. 2014) (declining to apply continuing-violation doctrine to § 1983 claim challenging the placement of a religious-themed sign on municipal property in alleged establishment-clause violation because last affirmative action taken by municipality was the physical installation itself, which occurred outside the limitations period). Indeed, other than the State's 2007 Registry placement decision, there is no other allegedly unconstitutional act alleged by Bird, much less one that occurred in the two-year period prior to the filing of her Complaint that would be necessary to bringing her claim within the continuing violation doctrine. *Tearpock-Martini*, 756 F.3d at 237 ("[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.") (quoting *Brenner v. Local 514*, 927 F.2d 1283, 1295 (3d Cir. 1991)).

What Bird appears to complain of is that the *injuries* she has suffered from the State's 2007 actions continue to the present. Because the "continuing impact from past violations is not actionable," *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982); because the case does not involve a "continuing pattern of discriminatory action," *Gutowsky v. Cty. of Placer*, 108 F.3d 256, 260 (9th Cir.),

*cert. denied*, 522 U.S. 914 (1997); and because all affirmative actions by the State occurred well prior to July 20, 2013, by which time Bird possessed the requisite information to bring the instant action, *Diaz v. Roman*, 799 F. Supp. 2d 134, 139 (D. Puerto Rico 2011); the continuing violation doctrine does not save Bird's Section 1983 claim here.

### D. That Bird's Lawsuit Labels Itself A "Class Action" Has No Bearing On The Court's Conclusion

In her supplemental briefing on the statute of limitations, Bird argues that some members of the putative "class" have claims that accrued within two years of July 20, 2015, when the Complaint was filed (ECF No. 1-1), thereby preserving Bird's claims. The Court does not see how or why that would be.

As an initial matter, there has been no class certification granted, or even sought, in this action; the parties have identified no potential class member plaintiffs; and counsel for Bird does not claim to represent any additional plaintiffs. Instead, the only information Bird offers in support of her contention appears to be a sworn statement by Jeffry R. Buchli, a Hawaii attorney who "bid and won the master contract to furnish attorneys to provide legal services to indigent parents who had been accused of neglect and/or abuse by Child Protective Services in the Family Court of the First Circuit Court, State of Hawaii." Buchli Decl. ¶ 6, ECF No. 43-3. Although Buchli declares that he has represented parents as their attorney in approximately 421 Chapter 587 proceedings, served as guardian ad

litem ("GAL") in approximately 257 Chapter 587 proceedings, and appealed 27 such cases to the Hawaii appellate courts, Buchli Decl. ¶ 8, no individual clients, cases, or their associated details are identified. Rather, the declaration states, in relevant part:

> 10. I do not recall any discussion regarding the issue of the child abuse registry being brought up by the DHS Social Workers with accused parents, [GAL]s, attorneys, or judges at any time.

> 11. I do not recall any court proceedings where the DHS social worker informed the family court judge of a parent's name being placed on the child abuse registry.

> 12. The issue of the child abuse registry was never brought up.

> 13. The issues that were brought up dealt mostly with the facts and circumstances of the alleged allegation of neglect and/or abuse.

Buchli Decl. ¶¶ 10–13.

Bird, in other words, offers no factual or legal authority to support her contention that the claims of such unidentified, hypothetical class members who no attorney has claimed to be representing should apply in this instance to preserve Bird's Section 1983 claim. *See* Pl.'s Suppl. Mem. 2. Bird's contention thus merits no further discussion.

## II. The Court Declines To Exercise Supplemental Jurisdiction Over The Remaining State Law Claim

Without a Section 1983 claim to anchor this Court's jurisdiction, and because no other basis for original jurisdiction exists, the Court turns to whether to

exercise supplemental jurisdiction over Bird's remaining state law claim. *See* 28 U.S.C. § 1367(c)(3). Where, as here, all federal claims are dismissed before trial, the exercise of jurisdiction over any remaining state claim is a matter of the Court's discretion. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715,726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right[; i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them.") (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Although neither retention nor remand is mandatory, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *superseded on other grounds by statute as recognized* in *Fent v. Okla. Water Res. Bd.,* 235 F.3d 553, 557 (10th Cir. 2000).

That is precisely the case here. Under the circumstances, neither fairness, nor judicial economy nor convenience to the parties counsel in favor of retaining jurisdiction. This case was originally filed by Bird in state court and is still in its

infancy.  Bird's remaining claim concerns alleged state law violations and "decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a sure-footed reading of applicable law."  *United Mine Workers*, 383 U.S. at 726.

Having carefully considered the relevant factors, the Court declines to exercise supplemental jurisdiction over the remaining state law cause of action and remands the case to state court.  *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 637 (2009) (holding that a district court may properly remand a removed case to state court after declining to exercise supplemental jurisdiction over the state law claims); *United Mine Workers*, 383 U.S. at 726 ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (citing *Wham-O-Mfg. Co. v. Paradise Mfg. Co.*, 327 F.2d 748, 752–54 (9th Cir. 1964)).

## III.    The Motion To Strike Is Denied As Moot

In light of the above analysis and conclusions, the Court hereby GRANTS the MSJ (ECF No. 24) with regard to Bird's Section 1983 claim, declines to exercise supplemental jurisdiction over Bird's remaining state law cause of action, and REMANDS the remainder of this action to state court.  Bird's Motion to Strike (ECF No. 39) thirteen of Defendants' exhibits in support of their MSJ, none of which is material to the Court's conclusions above, is DENIED AS MOOT.

## CONCLUSION

Defendants' Motion is GRANTED with respect to Count II. The Court REMANDS the remaining state-law claim to the Circuit Court of the First Circuit, State of Hawaii. The Clerk of Court is directed to send a certified copy of this order to the Circuit Court of the First Circuit, State of Hawaii.

IT IS SO ORDERED.

DATED: April 24, 2017 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

Bird v. State of Hawaii, et al.; CV 15-00304 DKW-BMK; **ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE LAW CLAIM**